**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DARRELL L. JONES,

     Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 17-1107
(D.C. No. 1:16-CV-00553-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

    Darrell Jones appeals the district court's judgment affirming a decision of the

Commissioner of the Social Security Administration denying his applications for

disability insurance benefits and supplemental security income. Exercising

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Jones applied for benefits, claiming he was disabled due to post-traumatic stress disorder, psychosis, arthritis, gout, lower back pain, and type II diabetes. After his applications were initially denied, he had a hearing before an administrative law judge (ALJ). The ALJ evaluated the evidence under the agency's standard five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ determined that although Jones had several severe impairments, including "history of right leg fracture" and "mild cataracts and refractive amblyopia," Aplt. App., Vol. I at 13, none met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, that are so severe as to preclude employment. The ALJ then found that Jones had the residual functional capacity (RFC) to work in the medium exertional category subject to a number of limitations, one of which is relevant to the issues in this appeal—that Jones "has the capacity for frequent vision in the areas of far acuity, near acuity, accommodation and depth perception." Aplt. App., Vol. I at 16.

At step four of the analysis, the ALJ determined that Jones's RFC permitted him to return to his prior relevant work as a warehouse worker. Alternatively, the ALJ found at step five that Jones could perform several other jobs that exist in significant numbers in the national economy, including, as relevant to this appeal, the job of dishwasher. Accordingly, the ALJ concluded that Jones wasn't disabled and denied his applications. The district court affirmed, and Jones appeals.

## DISCUSSION

Our task in this appeal is limited to determining whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We can't "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

### A.     Vision capacity

Jones first contends that the ALJ erred in finding he "has the capacity for frequent vision in the areas of far acuity, near acuity, accommodation and depth perception." Aplt. App., Vol. I at 16. He claims the medical evidence shows that his limitations in these areas prevent him from returning to his past relevant work as a warehouse worker. But we need not resolve this issue. Instead, we can assume that the ALJ's RFC was mistaken as to Jones's vision and that Jones can't work as a warehouse worker. Then, based on that assumption, we must decide whether the error was harmless. To deem an error harmless in the social-security context, we must be able to say with confidence that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

We conclude that any error in the ALJ's step-four finding was harmless given the ALJ's alternative finding at step five that Jones could work as a dishwasher.

3

*See Murrell v. Shalala*, 43 F.3d 1388, 1389–90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four). The dishwasher job the ALJ relied on at step five requires no near acuity, far acuity, depth perception, or accommodation. *See* Dictionary of Occupational Titles (DOT) No. 318.687-010, *available at* 1991 WL 672755 (indicating that such abilities are "Not Present" in the position of "kitchen helper"[1]). Jones hasn't argued that his vision impairment prevents him from performing the dishwasher job, and the ALJ found that there were 550,000 such jobs available in the national economy. Jones isn't under a disability if he can perform other kinds of work that exists in the national economy "*in significant numbers.*" 42 U.S.C. § 423(d)(2)(A) (emphasis added). 550,000 jobs is significant. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (noting that this court has found "only 152,000 jobs in the national economy" to be "significant" (internal quotation marks omitted)). The only remaining question for harmless error purposes is whether the ALJ erred in finding that Jones could perform work at the medium exertional level, which the dishwasher job requires.

**B.    Exertional capacity**

Work at the medium exertional level "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). To meet the requirement to lift and carry up

---

[1] Although the ALJ described the position as "dishwasher," she referred to DOT No. 318.687-010, which is titled "Kitchen Helper" and includes washing dishes among a variety of tasks. *See* 1991 WL 672755.

to 25 pounds, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983). The ALJ gave significant weight to the opinion of a state agency nonexamining consultant, Dr. Gawo, who opined that Jones could perform at such a level,[2] and gave little weight to the opinions of four other consulting physicians who said he couldn't. The ALJ reasoned that Dr. Gawo was familiar with the disability regulations; his opinion was the most consistent with the medical evidence; the opinions of three consultants who examined Jones (Drs. Amundson, Mitchell, and Traister) were largely inconsistent with their own relatively benign objective findings; and the opinion of the fourth consultant, Dr. Clark, who testified as an expert before the ALJ based on the three examining consultant's reports, was also inconsistent with their relatively benign objective findings.[3]

---

[2] Jones complains that the ALJ said Dr. Gawo found him capable of light work, and he suggests that we should question whether the ALJ even understood the substance of Dr. Gawo's opinion. But we agree with the Commissioner that the reference was a scrivener's error given that the ALJ gave significant weight to Dr. Gawo's opinion and concluded that Jones had the RFC for medium work.

[3] In 2010, Dr. Amundson thought Jones could stand and walk about six hours in a workday but required breaks every 30 to 60 minutes and could carry only 20 pounds frequently or occasionally. In 2012, Dr. Mitchell said Jones could stand or walk for four hours in a workday, required positional changes every 15 to 30 minutes, and could lift or carry 20 pounds frequently and 40 pounds occasionally. Also in 2012, Dr. Traister opined that Jones could stand and walk only 90 minutes in a workday and could lift and carry 50 and 30 pounds respectively. At the hearing in 2014, Dr. Clark posited that Jones could stand and walk a total of four hours per workday and had no lifting limitation.

5

Jones argues that the four other doctors' opinions overwhelmed Dr. Gawo's opinion. Thus, he reasons that Dr. Gawo's opinion doesn't constitute substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record . . . ." (internal quotation marks omitted)). But the ALJ explained why she discounted the four physicians' opinions, and Jones hasn't challenged those explanations. And although he contends that the ALJ didn't properly consider the six regulatory factors used to evaluate medical opinions set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the substance of his argument is limited to the fact that Dr. Gawo didn't examine him but three of the other four doctors did, and two of their opinions were largely consistent. That might implicate the second factor's "[n]ature and extent of the treatment relationship," including "the kinds and extent of examinations and testing the [medical] source has performed or ordered," 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). The ALJ, however, was well aware of whether each of the five doctors examined Jones, and the ALJ was entitled, indeed required, to consider Dr. Gawo's opinion even though he didn't examine Jones. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (explaining that an ALJ is entitled to consider the opinions of nonexamining physicians); 20 C.F.R. §§ 1513a(b)(1), 416.913a(b)(1) (requiring ALJs to consider evidence supplied by agency medical consultants according to §§ 404.1527 and 416.927 because such "consultants are highly qualified experts in Social Security disability evaluation"); *cf.* 20 C.F.R. §§ 404.1527(c)(6) 416.927(c)(6) (directing ALJs to consider how much

6

understanding a medical source has of "disability programs and their evidentiary requirements").

The ALJ was only required to give "good reasons" for the relative weight she gave to the five physicians. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Jones hasn't shown that the ALJ's reasons weren't "good." But he does present one more attack on the validity of Dr. Gawo's opinion—that it merely endorsed the opinion of a single decision-maker (SDM) who initially denied Jones's applications and assessed him with an RFC consistent with medium work. Jones contends that because the SDM was a non-expert, his opinion may not be a proper medical opinion under agency regulations, and Jones points out that the SDM did not examine him. But the ALJ did not merely rely on the SDM's opinion of Jones's exertional capacity, which is impermissible under the agency's own regulations, *see Program Operations Manual System* DI 24510.050 C. ("SDM-completed forms are not opinion evidence at the appeal levels.").[4] Rather, the ALJ relied on the opinion of Dr. Gawo, who did not summarily endorse the SDM's opinion as to exertional capacity but reviewed and evaluated the medical evidence, explained that the medical evidence didn't support Dr. Traister's standing and walking limitations, and affirmed the SDM's view because it was "reasonable," Aplt. App., Vol. 6 at 768.

---

[4] The POMS is a set of Social Security Administration polices used in claim processing to which we defer "unless we determine they are arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 & n.2 (10th Cir. 2001) (internal quotation marks omitted).

Jones provides no authority for the proposition that the ALJ acted impermissibly under these circumstances. Moreover, the scant nonprecedential authority the Commissioner cites or that we have found suggests the opposite, at least where, as here, substantial evidence supports the consulting physician's opinion endorsing or adopting the SDM's assessment. *See, e.g.*, *Quinn v. Colvin*, No. 6:15-cv-03203-NKL, 2015 WL 9460144, at *5 (W.D. Mo. Dec. 24, 2015) (unpublished) (concluding that substantial evidence supported ALJ's decision to accord great weight to opinion of state agency medical consultant who reviewed and adopted an SDM's opinion); *Long v. Colvin*, No. CIV-14-402-F, 2015 WL 5692318, at *10 (W.D. Okla. Sept. 11, 2015) (unpublished) (affirming ALJ's reliance on consultant's opinion that affirmed SDM's assessment, and collecting cases)[5]; *Keel v. Colvin*, No. 13-1458-SAC, 2015 WL 1034419, at *6, n.1 (D. Kan. Mar. 10, 2015) (unpublished) ("An ALJ does not err by relying on an [SDM's] opinion affirmed by an acceptable medial source after reviewing the evidence in the file."); *Holley v. Colvin*, No. 12-4057-JWL, 2014 WL 172183, at *8 (D. Kan. Jan. 15, 2014) (unpublished) (concluding that SDM's assessment became a nonexamining consultant's "medical findings and analysis as surely as if he had written it himself" after consultant reviewed all the medical evidence and affirmed the assessment "as written").

---

[5] Although *Long* concerns a magistrate judge's report and recommendation, that report was adopted and affirmed in full by the district judge, *see Long v. Colvin*, No. CIV-14-402-F, 2015 WL 5708388, at *1 (W.D. Okla. Sept. 28, 2015) (unpublished).

Because the ALJ did not err in finding that Jones could perform work at the medium exertional level, the ALJ properly found at step 5 that Jones could perform work as a dishwasher. Thus, we conclude that any step-four error was harmless.

**CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge